OPINION OF THE COURT
Ronni D. Birnbaum, J.
Petitioner brings this holdover proceeding seeking posses *737 sion of apartment 4B at 374 8th Street, Brooklyn, New York, on the ground that respondent’s lease expired.
The facts are not in dispute. Respondent’s apartment is subject to rent stabilization and he has resided there since 1995 paying a rental of $1,006.49 per month. Pursuant to the Rent Stabilization Code (9 NYCRR parts 2520-2530 [RSC]), a lease renewal form was personally delivered to respondent on January 25, 1998 and due to a defect another lease renewal form was given to him on February 17, 1998. The form was necessitated due to the pending expiration of respondent’s lease on May 31, 1998. On April 4, 1998 respondent informed petitioner that his 60 days to consider renewing the lease had not yet expired and requested that petitioner provide a statement regarding the interest on his security for the period of his five-year tenancy. He stated that “Now that I am considering moving, I must have this information to settle account with you.” On April 8, 1998, respondent returned the renewal lease form, checked off the box that stated he would not renew his lease and intended to vacate the apartment on the expiration date of his present lease. In a letter dated May 1, 1998, from the respondent to the landlord, respondent again noted that he would be vacating the premises. Approximately three days later, respondent changed his mind as indicated in his letter of May 4, 1998. Prior to changing his mind, respondent acknowledged that he was aware as of April 28, 1998 that his apartment was rented to the tenants from apartment 3D, Haydn Sweterlitsch and Julia Pranuake, effective June 1, 1998. Furthermore, petitioner had rented apartment 3D to another party also as of June 1, 1998. Mr. Sweterlitsch has withheld his rent for failure of the landlord to deliver possession of the apartment.
Upon the expiration of respondent’s lease, petitioner commenced this proceeding without serving a predicate notice. It is respondent’s contention that he was within the statutory provisions when he changed his mind and opted to keep his apartment. He further asserts that in any event a predicate termination notice must be served.
Under RSC § 2523.5 a notice must be given to a tenant not more than 150 days and not less than 120 days prior to the expiration of the lease term offering to renew the lease for a term of one or two years at the legal regulated rent permitted for such renewal and at the same terms and conditions as the expiring lease. The owner must give the tenant 60 days from the date of service of the notice to accept the offer and renew *738 the lease. In the event the tenant refuses to renew, the owner may commence a proceeding after serving a 15-day termination notice (see, RSC §§ 2524.2, 2524.3 [f]).
The question before the court is whether under the facts presented, respondent, after giving notice that he will not renew his lease and will be vacating at its termination, can change his mind thereby obligating the petitioner to renew his lease. If the petitioner is not so obliged does he have to comply with the Rent Stabilization Code and serve a notice of termination?
While the Rent Stabilization Code applies to a tenant’s refusal to sign a renewal lease, it has no application where a tenant specifically and voluntarily makes known his intention to vacate the premises upon termination of the lease. At the expiration of a lease, the tenant’s right to the continuation of a tenancy has expired. (See, 2 Rasch, Landlord and Tenant— Summary Proceedings § 26:15 [Dolan 4th ed].) Respondent was obligated to surrender possession upon the expiration of his lease subject to the provisions of the Rent Stabilization Code. The act of nonrenewal was clear and unequivocal. First, respondent made his intention known when he advised the petitioner that he was considering moving and wanted information on his security. Second, he then returned the lease renewal form indicating that he would not be renewing the lease. Third, his position was quite clear when to settle his rent account he wrote “I would like to give you another $250 upon my departure.”
Respondent’s election to terminate his tenancy was explicit; he cannot simply retract his voluntary termination. Respondent’s argument that he should be permitted to rescind his termination because to do otherwise would be a waiver of any benefits conferred under the Rent Stabilization Code is without merit. RSC § 2520.13 provides that “An agreement by the tenant to waive the benefit of any provision of the RSL or this Code is void”. This section refers to an agreement between the parties. There was no negotiated settlement or agreement between the parties to have respondent move. Respondent’s decision to surrender his apartment was a unilateral decision accepted by petitioner. Petitioner had no choice but to accept respondent’s decision to vacate at the end of his lease. RSC § 2520.13 was intended to avoid situations whereby the landlord attempts to circumvent the benefits of the RSC proscribed by law to a tenant who is in possession. Among such benefits that cannot be waived are breach of warranty of habitability, rent reductions, rent overcharges, or agreeing to pay
*739 more than the legal regulated rent. (See, Matter of 47-40 41st Realty Corp. v New York State Div. of Hous. & Community Renewal, 225 AD2d 547; Matter of Century Operating Corp. v Popolizio, 90 AD2d 731.) Respondent’s election to expressly, affirmatively and unequivocally surrender future possession of his tenancy was clearly not a waiver of benefits under the Rent Stabilization Code.
Leases are held to the same rules as any other contract. (Louis C. Morandi, P. C. v Charter Mgt. Co., 159 AD2d 422.) Once a contract has been entered into the parties may not be relieved of their respective obligations barring unusual circumstances to permit equity to intervene. A “tenant [is] entitled to ‘the benefit of the rule or practice in equity which relieves against such forfeitures of valuable lease terms when default in notice has not prejudiced the landlord, and has resulted from an honest mistake, or similar excusable fault’ ”. (J. N. A. Realty Corp. v Cross Bay Chelsea, 42 NY2d 392, 398.) Respondent’s refusal to vacate has caused prejudice to petitioner. Petitioner relied to its detriment on respondent’s representation. Respondent’s change of heart in vacating has had a snowball effect on two other families. The Sweterlitsch family who are currently residing in apartment 3D have not been able to move into respondent’s apartment in spite of having signed a lease for said unit. The other family has not been able to move into the Sweterlitsch’s apartment because of the situation created by respondent. Petitioner having relied upon respondent’s representation that he was terminating his tenancy, respondent is now estopped from claiming that the Rent Stabilization Code applies. Respondent’s claim that his decision was based on harassment and retaliatory eviction is unsupported by the evidence. Since the Rent Stabilization Code has no applicability to a voluntary termination of the lease, the 15-day notice of termination is of no necessity. The leasehold has come to an end.
Accordingly, petitioner is awarded a final judgment of possession. Issuance of the warrant is stayed 10 days. Execution of the warrant is stayed 45 days.